In re William BURGIE and Roberta Burgie, Debtors.

Kathleen A. McDonald, Chapter 13 Trustee, Appellant,

v.

William Burgie and Roberta Burgie, Appellees.

BAP No. NV–98–1290–BuRyK.

Bankruptcy No. 97–25221–LBR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 23, 1999.

Decided Aug. 31, 1999.

Charles L. Kennon, III, Las Vegas, NV, for Kathleen A. McDonald, trustee.

Christopher P. Burke, Las Vegas, NV, for William and Roberta Burgie.

Before: BUFFORD,[1] RYAN, and KLEIN, Bankruptcy Judges.

## OPINION

BUFFORD, Bankruptcy Judge.

### I. ISSUE

In this case we must decide whether the unreinvested proceeds from the sale of the debtors' homestead after the confirmation of the chapter 13[2] plan constitute "disposable income" that must be used to pay creditors pursuant to a motion by the trustee to amend the plan.

The bankruptcy court authorized the debtors to retain the net proceeds from the sale of their homestead, after the purchase of a new homestead at a lower price. The court denied the trustee's motion to modify the chapter 13 plan to require that the net proceeds be treated as disposable income and paid to unsecured creditors under the plan. We AFFIRM.

---

1. Hon. Samuel L. Bufford, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 1998) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## II. FACTS

The confirmed chapter 13 plan of joint debtors William and Roberta Burgie provides for a dividend of approximately 34% to general unsecured creditors. Because some unsecured creditors did not file claims, the general unsecured creditors are actually expected to receive a dividend of approximately 86% under the plan.

When the debtors filed their chapter 13 petition, they claimed a homestead exemption of $44,313 for their residence in Henderson, Nevada. Five days after the confirmation of the plan, debtors moved for court approval (which was granted in due course) to sell their residence. After paying the first and second mortgages and closing costs, the debtors received net proceeds of approximately $63,000 from the sale. In their motion for approval of the sale, the debtors stated that they planned to use these funds to purchase a new home in the near future.

Appellant Kathleen A. McDonald, the chapter 13 trustee ("Trustee"), did not object to the sale or the debtors' intended use of the proceeds thereafter. Trustee did request, however, that, until the court issued a final order approving the purchase of the debtors' new residence, any escrow proceeds be either retained by the escrow company in an interest bearing account or by Trustee in a certificate of deposit.

After the sale, Trustee moved to modify the plan to require the use of a portion of the sale proceeds to provide a 100% dividend to general unsecured creditors under the plan. The court denied the motion and Trustee has appealed.

While the appeal was pending, the debtors obtained court approval to purchase a new residence. Subsequently, the debtors used $43,000 of the proceeds of the sale of their old residence as a down payment on a new residence. The debtors stated that they intended to use the $20,000 balance to support themselves and to help complete their plan.

Trustee's appeal challenges only the debtors' retention of this $20,000 balance. Pending the resolution of this appeal, Trustee holds the funds.

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear Trustee's appeal from the order denying her motion to modify the confirmed chapter 13 plan. 28 U.S.C. § 158 (West 1998); FED. R.BANKR.P. 8001.

■ We do not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. *See* FED.R.BANKR.P. 8013. We review conclusions of law and statutory construction *de novo*. *See Citibank (South Dakota) N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. BAP 1996); *White v. Santee (In re White)*, 186 B.R. 700, 703 (9th Cir. BAP 1995).

■ Modification of a confirmed chapter 13 plan must meet the same requirements as those imposed on an initial chapter 13 plan. *See Powers v. Savage (In re Powers)*, 202 B.R. 618, 622–23 (9th Cir. BAP 1996). In addition, such a motion is subject to the discretion and good judgment of the bankruptcy judge. *See id.* at 622.

## IV. DISCUSSION

### A. Modification of Chapter 13 Plan

■ Modification of a confirmed chapter 13 plan is governed by § 1329, which provides that a plan may be modified at any time after confirmation but before completion of payments for any of the following purposes: (1) to increase or reduce the amount of payments on claims of a particular class provided for by the plan, (2) to extend or reduce the time for such payments, or (3) to alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan. Section 1329(b)(1) specifies that

§§ 1322(a), 1322(b), 1323(c) and 1325(a) apply to plan modifications. Section 1329 makes no reference to § 1325(b),[3] the disposable income provision. *See Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 434 (9th Cir. BAP 1997).

In this case, the evidence is unclear whether Trustee objected to the plan at the confirmation hearing based on the disposable income test.[4] We assume without deciding that § 1325(b) applies to the modification motion in this case because the parties and the bankruptcy court made this assumption and this issue is not raised on appeal.

■ A party has an absolute right to request modification of a plan between its confirmation and the completion of the plan. See *Powers*, 202 B.R. at 622. However, a motion by a trustee to modify a chapter 13 plan is subject to the bankruptcy judge's discretion and good judgment. *See id.* Trustee has not shown that the bankruptcy judge in this case abused her discretion in denying the motion to modify.

### B. Disposable Income

■ Even if Trustee had shown that she had objected to confirmation on the grounds that the disposable income test was not satisfied, Trustee would fail in her argument that the $20,000 balance of the

sale proceeds constitutes disposable income. The proceeds of the sale of a debtor's real estate in a chapter 13 case never become disposable income for the purposes of chapter 13. This result applies in a chapter 13 case whether or not the property is exempt from execution. While a debtor may voluntarily use such proceeds to make payments to creditors under a chapter 13 plan, a debtor cannot be compelled to use the proceeds for this purpose.

### 1. Section 1325(b)

Trustee contends that the $20,000 balance of the sale proceeds constitutes disposable income under § 1325(b)(2), which defines "disposable income" for the purposes of § 1325(b)(1). Section 1325(b)(1)[5] specifies that, if the trustee or a holder of an allowed unsecured claim objects to the confirmation of a chapter 13 plan, the court may not approve the plan unless the plan provides (a) for the payment of all unsecured creditors in full, or (b) that all the debtor's projected disposable income be applied to make plan payments for a period of at least three years.

Disposable income, as defined in § 1325(b)(2), is the net income received by a debtor after paying reasonably necessary expense for the maintenance or support of

---

3. Section 1325(b)(2) provides in relevant part:

> For the purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor....

4. Trustee asserts that she made a disposable income objection at the confirmation hearing. Debtor contends otherwise. There is no evidence in the record one way or the other. Trustee's only submission on the subject is the confirmation order, where the line for rulings on objections to the plan is blank. An appellate court may decline to consider an argument when the necessary record is not before it. *See Than*, 215, B.R. at 432 n. 3; *see also In re Yarbrow*, 150 B.R. 233, 237 (9th Cir. BAP 1993); *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 603 n. 1 (9th Cir.1990); *United States v. Mills*, 597 F.2d 693, 698 (9th Cir.

1979). Therefore, the Panel will not consider Trustee's assertion that she made a § 1325(b)(1) objection at the confirmation hearing.

5. Section 1325(b)(1) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

the debtor and the debtor's dependents (including qualifying charitable deductions).

## 2. The Chapter 13 Deal

The disposable income test may apply in the context of the modification of a chapter 13 plan under § 1329. *See, e.g., Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 434 (9th Cir. BAP 1997); *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (9th Cir. BAP 1996). However, the test is inapplicable to a property sale that does not generate disposable income.

### a. Statutory Analysis

An examination of the basic structure of chapter 13 makes it clear that the debtors cannot be compelled to use the proceeds from the sale of prepetition real estate to pay creditors under a confirmed chapter 13 plan.

In place of liquidating non-exempt assets to pay creditors under chapter 7 of the Bankruptcy Code, Congress gave individuals with regular income the option of adjusting their debts pursuant to a plan under chapter 13. The chapter 13 deal permits a debtor to retain all prepetition property, including earnings, assets, money in the bank and real estate. In exchange for keeping all of these assets, the debtor must commit all postpetition disposable income[6] to the payment of creditors under a chapter 13 plan for a period of three to five years. If the debtor makes all of the payments required under the plan, all of the debtor's dischargeable debts are discharged, and the debtor keeps all of the prepetition assets.

Postpetition disposable income *does not include prepetition property or its proceeds*. This is the chapter 13 debtor's bargain. Creditors of a chapter 13 debtor have no claim to any of these assets. *See*

*Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 796, 798 (9th Cir. BAP 1995); *see also* 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY §§ 1.7, 1.21, 1.44, 8.17 (2d ed.1997).

Creditors are protected by the requirement that the plan provide them at least as much value (discounted to present value) as they would receive under a chapter 7 liquidation of the debtor's estate. *See* § 1325(a)(4); *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132 (4th Cir.1995).

The sale of a capital asset does not create "disposable income" pursuant to § 1325. Disposable income under § 1325 is postpetition income received by the debtor that is not reasonably necessary for the maintenance or support of the debtor or a dependant of the debtor. *See* § 1325(b)(2). A debtor's prepetition homestead is a capital asset, not postpetition income. So it remains under a chapter 13 plan. Therefore, the debtors in this case cannot be compelled to modify their plan to treat the balance of the sale proceeds as disposable income to be distributed under the plan.

### b. Case Law

Case law supports this analysis. Only regular income and substitutes therefor can be counted in the determination of disposable income for the purposes of the chapter 13 test. *See, e.g., Hagel*, 184 B.R. at 799 (social security disability payments); *In re Jackson*, 173 B.R. 168, 171 (Bankr. E.D.Mo.1994) (workers compensation proceeds); *In re Minor*, 177 B.R. 576, 582–83 (Bankr.E.D.Tenn.1995) (same).

The test is whether the asset in question is an anticipated stream of payments. If it is a stream of payments, the payments must be included in projected income. If the asset is not a stream of payments, it is not included. *See, e.g., Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132 (4th Cir.1995) (holding that withdrawals from

---

6. Section 1322(a) provides in relevant part:
   The plan shall—
   (1) provide for the submission of all or such portion of future earnings or other

future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. . . .

individual retirement accounts were not income or income replacements, because the debtor was not receiving a regular distribution from the accounts);[7] *In re Bicsak*, 207 B.R. 657, 661–61 (Bankr. W.D.Mo.1997) (holding that thrift savings plan monthly payroll deductions could be "included as part of a hypothetical chapter 13 disposable income calculation in determining whether a chapter 7 case could be dismissed as a substantial abuse"); *Gaertner v. Claude (In re Claude)*, 206 B.R. 374 (Bankr.W.D.Pa.1997) (holding that personal injury settlement proceeds are disposable income to the extent that they are not reasonably necessary for the support of the debtors); *In re Baker*, 194 B.R. 881, 885 (Bankr.S.D.Cal.1996) (life insurance policy proceeds).

The foregoing cases are frequently based on the "lump asset doctrine." Under the lump asset doctrine, if the exempt asset in question is an anticipated stream of payments, it is included in projected disposable income; if the exempt asset is other than a stream of payments, it is not included. This label is somewhat of a misnomer. The proper inquiry regarding the assets in question is whether they are income or income substitutes, not whether the debtor receives them in bulk or in installments.

■ After confirmation of a chapter 13 plan, a debtor may volunteer to pay creditors from capital assets, and thereby relieve future income from the obligations under the plan. *See e.g., Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir.1996) (tax refund based on prepetition income); *In re Martin*, 232 B.R. 29, 32 (Bankr.D.Mass.1999) (difference between previous mortgage payments and current lower payments); *Tomasso*, 98 B.R. at 515 (proceeds of a sale of a

homestead). However, a chapter 13 debtor cannot be compelled to do so. Even if the debtors had formed an intention to sell their house before the confirmation of their plan, they could not be compelled to use the proceeds to pay creditors under their chapter 13 plan.

### c. Exempt Prepetition Property

■ Whether prepetition property, sold by the debtor after plan confirmation, is exempt is not directly relevant to the foregoing analysis. Under a chapter 13 plan, the debtor is entitled to keep all of the debtor's prepetition property, whether or not it qualifies under the applicable exemption laws.

*Tomasso* appears to consider the exempt status of an asset as a factor in determining whether it is § 1325 disposable income. *See In re Tomasso*, 98 B.R. 513, 515 (Bankr.S.D.Cal.1989) (holding that exempt portion of a lump sum personal injury settlement is not included in disposable income, but non-exempt portion is so included). However, that opinion was subsequently clarified by the Bankruptcy Appellate Panel, which found that *Tomasso* had rested its holding on the lump sum nature of the asset and that the asset's incidental exempt status had not been the deciding factor in the determination of the disposable income issue. *See Hagel*, 184 B.R. at 797 n. 3; *see also Baker*, 194 B.R. at 884–85.

The key inquiry in this case is not whether the sale proceeds were exempt. Rather, the question is whether the sale proceeds constitute "future earnings or other future income of the debtor." *See* § 1322(a)(1). Clearly, the proceeds from the sale of a prepetition asset (whether exempt or not)[8] are not future earnings or

---

**7.** Funds in a retirement account are savings from prepetition income. They are thus necessarily not income or replacement income.

**8.** Whether prepetition property is exempt from execution is indirectly relevant under chapter 13 in two ways. First, exemptions

figure directly in the calculation of how much the creditors would receive in a chapter 7 liquidation, which is the minimum that they must receive under the chapter 13 plan. *See* § 1325(a)(4). Exempt property is not included in this calculation. Second, the value of exempt property held by a debtor may have a

income. Thus, the court correctly denied the modification motion.

### V. CONCLUSION

We conclude that the $20,000 balance that debtors currently hold from the sale of their residence is not disposable income as understood under § 1325. Therefore, we affirm the bankruptcy court's order denying Trustee's motion for plan modification.

role in the determination of whether a chapter 13 plan is proposed in good faith. *See* § 1325(a)(3).

Apart from these indirect considerations, a debtor's right to claim that property is exempt is irrelevant to its status as disposable income under chapter 13. *See Hagel,* 184 B.R. at 796, 798.